UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH HAGER,

        Plaintiff,

v.

SULLIVAN ASSET MANAGEMENT,
LLC, JOSHUA J. SULLIVAN, DAVID A.
OBROCHTA, GERALDINE ANGELO
and DOUGLAS J. MACKINNON,

        Defendants.

_____/

## COMPLAINT

### I.    Introduction

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L.§ 445.251 *et seq.,* and Michigan Occupational

Code ("MOC") M.C.L. § 339.901 *et seq.*

2.    Defendants, along with other entities to be identified in discovery, are involved in

a fraudulent, criminal and ongoing scheme whereby they extort the payment of money from

consumers across the country who allegedly have failed to repay payday loans.  Defendants as

well as many other entities located in and around Buffalo, New York and elsewhere are involved

in ongoing criminal schemes to collect delinquent payday loans through the use of a script,

sometimes known as "The Shakedown" or "The Shake," that includes variations of the

following:  The caller calls from a blocked number or uses a spoofed telephone number with the

consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "defrauding a financial institution" and otherwise represents that the consumer has committed a crime, threatens the consumer with incarceration, and suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  When the consumer responds to the call, the collector (sometimes posing as an attorney) accuses the consumer of having committed a crime, makes false threats of pending litigation and prosecution, and demands payment of the alleged debt.  Often times, the consumer's account will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.

3.　　The use of these unlawful debt collection practices by defendants and other debt collectors is epidemic, as described in the numerous complaints filed over the past several years by the Federal Trade Commission, Consumer Financial Protection Bureau and various state attorneys general in various United States District Courts.

## II.　　Jurisdiction

4.　　This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.　　Parties

5.　　Plaintiff Beth Hager is a natural person residing in Kent County, Michigan. Ms. Hager is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Hager

is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

6.      Defendant Sullivan Asset Management, LLC ("SAM") is a New York limited liability company, claiming to operate at 1967 Wherle Drive, Suite 1, Williamsville, New York 14221 as well as at 25 Northpointe Parkway, Suite 25, Amherst, New York 14228.  According to documents filed by SAM with the State of Florida on April 29, 2015, the Managing Member of SAM is defendant Joshua J. Sullivan.  SAM uses multiple registered agents, including Corporate Creations Network, Inc., 11380 Prosperity Farms Road, #221E, Palm Beach Gardens, Florida 33410.  SAM uses multiple telephone numbers, including 716-239-4355, 716-260-2429, 844-273-0499, 855-242-9670 and 855-243-0054. SAM oversees, manages, tracks and facilitates the collection of delinquent consumer debts, mostly payday loans, some of which that are owned by SAM and some of which that are owned by various entities.  SAM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  SAM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  SAM is a "debt collector" as the term is defined and used in the FDCPA.  SAM is a "regulated person" as the term is defined and used in MRCPA.  Alternatively, SAM is a "collection agency" and "licensee" as the terms are defined and used in MOC.

7.      SAM directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Hager as described in this complaint.

8.      Defendant Joshua J. Sullivan, age 41, is a natural person, purportedly residing at 1410 Billington Road, East Aurora, New York 14052-9451, which is the same address listed for Mr. Sullivan on a State Tax Warrant Release issued by the State of New York on April 22, 2015.

3

Mr. Sullivan is an owner and managing member of defendant Sullivan Asset Management, LLC. Mr. Sullivan uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Sullivan regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Sullivan is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Sullivan is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Mr. Sullivan is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

9.      Mr. Sullivan (a) created the collection policies and procedures used by SAM and its employees and agents, (b) managed the daily collection operations of SAM, (c) oversaw the application of the collection policies and procedures used by SAM and its employees and agents, (d) ratified the unlawful debt collection policies and procedures used by SAM and its employees and agents, as well as the other defendants to this lawsuit, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by SAM and its employees and agents, as well as the other entities, their employees and their agents named in this complaint, all who participated and acted in concert, to collect an alleged debt from Ms. Hager as described in this complaint.

10.     Mr. Sullivan directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Hager as  described in this complaint.

11.     Mr. Sullivan previously collected consumer debts as owner, officer and manager of an entity named Check & Credit Recovery, Inc., which was given a rating of "F" by the Better Business Bureau of Upstate New York for using the same unlawful tactics that are described in this complaint.

12.     Mr. Sullivan also is a member manager of a non-party entity named Featured

Mediation, LLC ("FM").  Debts collected by SAM for the benefit of SAM, FM and other entities

are sometimes processed through a non-party payment processor named NCW Billing, Inc.,

pursuant to the terms of various Services Agreements.

13.     Defendant David A. Obrochta, age 50, is a natural person, purportedly residing at

254 Lyndale Avenue, Buffalo, New York 14223-3006.  Mr. Obrochta claims to be the Client

Service Manager of defendant Sullivan Asset Management, LLC, with duties that include

supervising up to eight client service specialist point callers to liquidate large debt assignments

that include payday loans. Mr. Obrochta also claims to monitor all SAM debt collection

activities, to motivate staff to handle a high influx of inbound and outbound debt collection calls,

and to collect up to $120,000.00 in debt per month "while fully compliant with all FDCPA

laws." Mr. Obrochta uses interstate commerce and the mails in a business the principal purpose

of which is the collection of debts.  Mr. Obrochta regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Obrochta is a

"debt collector" as the term is defined and used in the FDCPA.  Mr. Obrochta is a "regulated

person" as the term is defined and used in the MRCPA.  Alternatively, Mr. Obrochta is a

"collection agency" and  "licensee" as the terms are defined and used in the MOC.

14.     Mr. Obrochta (a) created the collection policies and procedures used by SAM and

its employees and agents, (b) managed the daily collection operations of SAM, (c) oversaw the

application of the collection policies and procedures used by SAM and its employees and agents,

(d) ratified the unlawful debt collection policies and procedures used by SAM and its employees

and agents, as well as the other defendants to this lawsuit, and (e) had knowledge of, approved

and ratified the unlawful debt collection practices used by SAM and its employees and agents, as

well as the other entities, their employees and their agents named in this complaint, all who

participated and acted in concert, to collect an alleged debt from Ms. Hager as described in this

complaint.

15.     Mr. Obrochta directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from Ms. Hager as  described in this complaint.

16.     Defendant Geraldine Angelo, also known as Geraldine DellaPenta Angelo, age

43, is a natural person, purportedly residing at 72 Clark Street, Tonawanda, New York 14150-

5206.  Ms. Angelo claims to be the Operations Administrator of defendant Sullivan Asset

Management, LLC.  Ms. Angelo uses an email address of

gangelo@sullivanassetmanagement.com. Ms. Angelo uses interstate commerce and the mails in

a business the principal purpose of which is the collection of debts.  Ms. Angelo regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another.  Ms. Angelo is a "debt collector" as the term is defined and used in the FDCPA.

Ms. Angelo is a "regulated person" as the term is defined and used in the MRCPA.

Alternatively, Ms. Angelo is a "collection agency" and  "licensee" as the terms are defined and

used in the MOC.

17.     Ms. Angelo (a) created the collection policies and procedures used by SAM and

its employees and agents, (b) managed the daily collection operations of SAM, (c) oversaw the

application of the collection policies and procedures used by SAM and its employees and agents,

(d) ratified the unlawful debt collection policies and procedures used by SAM and its employees

and agents, as well as the other defendants to this lawsuit, and (e) had knowledge of, approved

and ratified the unlawful debt collection practices used by SAM and its employees and agents, as

6

well as the other entities, their employees and their agents named in this complaint, all who participated and acted in concert, to collect an alleged debt from Ms. Hager as described in this complaint.

18.     Ms. Angelo directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Hager as  described in this complaint.

19.     Defendant Douglas J. MacKinnon, age 50, is a natural person residing at 6575 Megan Rose Way, East Amherst, New York 14051. Upon information and belief, Mr. MacKinnon is an owner, officer, managing member, employee and agent of SAM, or otherwise oversees and controls SAM.  Mr. MacKinnon previously owned and operated a debt collection agency named Account Management Services, LLC, through which Mr. MacKinnon routinely and intentionally violated the FDCPA and numerous other laws and defrauded consumers, until the company was forced to close.  Mr. MacKinnon oversees and controls a complicated web of debt collection entities, through which he collects millions of dollars a year through the use of hte unlawful debt collection practices that are described in this complaint. Mr. MacKinnon uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. MacKinnon regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. MacKinnon is a "debt collector" as the term is defined and used in the FDCPA.  Mr. MacKinnon is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Mr. MacKinnon is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

20.     During all times pertinent hereto, Mr. MacKinnon (a) created the collection policies and procedures used by SAM and its employees and agents, (b) managed and oversaw

the daily collection operations of SAM, (c) oversaw the application of the collection policies and procedures used by SAM and its employees and agents, (d) ratified the unlawful debt collection policies and procedures used by SAM and its employees and agents, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by SAM and its employees and agents, as well as the other interconnected entities and their employees and agents, operated for the coordinated purpose of collecting consumer debts from Ms. Hager and others through use of the unlawful debt collection practices that are described in this complaint.

21.     During all times pertinent hereto, Mr. MacKinnon directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. Hager that are described in this complaint.

22.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

23.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

24.    On or about May 11, 2009, Ms. Hager obtained a payday loan from an entity named Cottonwood Financial, Ltd., doing business as Cash Store ("Cash Store"), and borrowed several hundred dollars at an annual rate of interest that exceeded three hundred percent. Cash Store assigned the transaction an original account number of 9060533949.  Ms. Hager used the borrowed money to obtain goods or services for personal, family or household purposes.  Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA, MRCPA and MOC.

25.    Ms. Hager allegedly failed to repay the debt.

26.    The account became delinquent prior in May of 2009.

27.    On or about June 19, 2009, Cash Store charged off the delinquent account.

28.    Cash Store sold the charged-off account to an entity named National Credit Adjusters, L.L.C. ("NCA").

29.    On or about December 6, 2010, NCA sold the account to an entity named Northern Resolution Group, LLC ("NRG").

30.    In or about March of 2014, NRG sold or otherwise transferred the account to an entity named Enhanced Acquisitions LLC ("EA").

31.    On or about December 31, 2014, EA sold or otherwise transferred the account to defendant Sullivan Asset Management, LLC.

9

32.     As of June 1, 2015, the debt was no longer judicially enforceable by operation of the applicable Michigan statute of limitation.  Stated differently, the debt was time-barred.

33.     On June 11, 105, SAM sent an email to Ms. Hager. Attached to the email were two letters. One letter stated that SAM had purchased Ms. Hager's Cash Store account on December 31, 2014 and that Ms. Hager owed SAM the sum of $$876.00 comprised of a "Principal Balance" of $676.00, plus "Interest & Fees" of $200.00. The other letter stated that if Ms. Hager paid $400.00 to SAM by July 1, 2015, then SAM would "close your delinquent account as settled in full."  The email and two letters are the only written communications ever sent by SAM to Ms. Hager.  A copy of the email and two letters are attached hereto as Exhibit A.

34.     On June 22, 2015, a SAM employee and agent named "Brandi" placed a call to Ms. Hager's husband and made the following representations regarding Ms. Hager and the account:

    a)     SAM was "looking to pursue the account for the $867.00."

    b)     Ms. Hager "is looking at breaching a legally binding contract and if there is no payment on the account, then they'll consider that intent to defraud a financial institution. So long as there is some kind of voluntary restitution on the account, they'll put in in a voluntary status and we'll be able to help you out."

    c)     "With no payment on the account, then it looks as if she intended to defraud a financial institution which means she took out a loan with no intent to pay it back."

    d)     "Whatever they deem necessary to get the funds back, that's whatever

they'll do. That can mean several things. The can take you to court. They

can garnish your wages."

35.     On June 25, 2015, SAM placed a call to Ms. Hager and used a pre-recorded and

computer generated voice to leave the following message: " . . . to discuss voluntary resolution

of this matter. You may contact us at 855-243-0054. When calling, please refer to file number

770777.  Please be advised this is not a solicitation. We will be expecting a response. Thank

you."  The message failed to state that the communication was from a debt collector.

36.     On June 30, 2015, a SAM employee and agent named "Brandi" placed a call to

Ms. Hager's husband and made the following representations regarding Ms. Hager and the

account:

      a)     On July 22, 2015, SAM "is looking to pursue this account for $867.00."

      b)     SAM "will retrieve the funds however they see fit."

      c)     "The account was charged off almost immediately, which means [Ms. Hager] intended on defrauding a financial institution. She took out a loan with no intention of paying it back."

      d)     "[Ms. Hager] is being charged with intent to defraud a financial institution and breach of a legally binding contract."

      e)     "It's called being an adult and managing your money properly."

      f)     "Just let [Ms. Hager] know that I'm going to have them pursue the account. Good luck."

37.     The above-described threats and representations made by defendants' employees

and agents were false and part of a scripted and unlawful debt collection practice that is ongoing

and is currently being perpetrated by defendants to coerce the payment of millions of dollars from thousands of consumers throughout the United States by use of false threats, intimidation, criminal extortion, and unlawful harassment of the consumers and their relatives and other third parties.

38.     Defendants employees and agents falsely represented and falsely implied that a lawsuit had been filed against Ms. Hager.

39.     Defendants employees and agents falsely represented and falsely implied that a lawsuit would be filed against Ms. Hager.

40.     Defendants employees and agents falsely represented, falsely implied, wrongfully represented and wrongfully implied that Ms. Hager would be sued on a time-barred debt.

41.     Defendants employees and agents falsely represented and falsely implied that two criminal charges had been filed or were about to be filed against Ms. Hager.

42.     Defendants employees and agents falsely represented and falsely implied that Ms. Hager's wages were going to be garnished.

43.     Defendants employees and agents falsely represented and falsely implied that Ms. Hager's wages could be garnished.

44.     Defendants employees and agents falsely represented and falsely implied that Ms. Hager was the subject of an ongoing criminal investigation.

45.     Defendants employees and agents falsely represented and falsely implied that Ms. Hager was a criminal who committed fraud.

46.     Defendants and their employees and agents misrepresented and concealed their identities in their communications with Ms. Hager.

47.     Defendants employees and agents falsely represented and falsely implied that a law firm was involved in the efforts to collect the alleged debt.

48.     Defendants and their employees and agents falsely represented and falsely implied the amount owed by Ms. Hager on the account.

49.     Defendants and their employees and agents wrongfully inflated the amount of the alleged debt.

50.     Defendants did not intend to file a lawsuit against Ms. Hager in any Michigan court in efforts to collect the alleged debt.

51.     No defendant has never filed any lawsuit in any Michigan court to collect any debt from any person.

52.     The FDCPA states that it is unlawful for a debt collector to use or threaten to use criminal means to harm the reputation or property of any person. 15 U.S.C. § 1692d(1).

53.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

54.     The FDCPA states that it is unlawful for a debt collector to falsely represent or falsely imply that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

55.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

56.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector

for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

57.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

58.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

59.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

60.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

61.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

62.    The FDCPA states that it is unlawful for a debt collector to falsely represent or falsely imply that the consumer committed any crime or other conduct in order to disgrace the consumer.  15 U.S.C. § 1692e(7).

63.    The FDCPA states that it is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be

14

known to be false.  15 U.S.C. § 1692e(8).

64. The FDCPA states that it is unlawful for a debt collector to use any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court of the United States or any State, or which creates a false impression as to its source, authorization, or approval. 15 U.S.C. § 1692e(9).

65. The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

66. The FDCPA states that it is unlawful for a debt collector to fail to disclose in an oral communication with the consumer that the communication is from a debt collector and that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11)

67. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

68. The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

69. The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

70. The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

71.     Defendants have violated the FDCPA, 15 U.S.C. §§ 1692d(1) and (6), 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (9), (10), (11), (13) and (14), and 1692f and 1692f(1).

72.     Defendants and their employees and agents falsely accused Ms. Hager of having committing a crime.  Ms. Hager's refusal to pay the alleged debt was not a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored." M.C.L. § 487.2158(4).

73.     Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

74.     Defendants and their employees and agents criminally extorted money from Ms. Hager and violated M.C.L. § 750.213.

75.     Defendants and their employees and agents failed to timely send to Ms. Hager a notice containing the information required by 15 U.S.C. § 1692g(a).

76.     Each defendant and each defendant's employees, managers, owners, agents,

attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the scripts and other unlawful debt collection practices that are described in this complaint.

77.    Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

78.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

79.    Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

80.    As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

**V.    Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

81.    Plaintiff incorporates the foregoing paragraphs by reference.

82.     Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)     Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)     Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)     Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)     Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)     Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)     Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

83.     Plaintiff incorporates the foregoing paragraphs by reference.

84.     Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)     Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)     Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)     Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)     Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)     Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)     Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)     Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to M.C.L. § 445.257(2);

b)     Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)     Statutory damages pursuant to M.C.L. § 445.257(2);

d)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)     Equitable relief pursuant to M.C.L. § 445.257(1).

## Count 3 – Michigan Occupational Code

85.     Plaintiff incorporates the foregoing paragraphs by reference.

86.     Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

20

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: October 14, 2015

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
**Attorney for Plaintiff**
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com